IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD RITZ CALLAHAN, NEIL DEAN NEARY, EDWARD THOMAS McINTEE, and WILLIAM THOMAS PENGELLY,<br><br>Defendants. | CR 15–37–BU–DLC<br><br>ORDER |

Before the Court are two motions by Defendant Edward Thomas McIntee ("McIntee"). Through these motions, McIntee requests: (1) the suppression of evidence seized from his vehicle on July 1, 2013; and (2) the dismissal of Count VII of the underlying Indictment which charges McIntee with possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)). The Government has responded to these motions and argues that they are without merit and should be denied. For the reasons explained below, these motions will be denied.

1

## BACKGROUND

McIntee, along with co-Defendants Edward Ritz Callahan, Neil Dean Neary, and William Thomas Pengelly, are charged in Count I of an underlying seven-count Indictment with conspiring to possess methamphetamine with intent to distribute.  The alleged conspiracy was purported to have occurred in Silver Bow County, in the State and District of Montana, beginning on or about June 2012, and continuing until on or about February 2013.  Counts VI and VII of the Indictment, however, separately charge McIntee with distribution of methamphetamine and possessing a firearm in furtherance of a drug trafficking crime, respectively.  Unlike Count I of the overall charged conspiracy, Counts VI and VII allege criminal conduct in a different time and county.

The factual underpinnings of these counts  arise from a stop and search of McIntee by Forest Service Law Enforcement officers during the "2013 Montana Rainbow Gathering" in Beaverhead County, Montana. (Doc. 53-1 at 1).  McIntee was stopped at 1:50 a.m. after he failed to signal before turning down an isolated road in the Beaverhead National Forest.  After being stopped, the officers approached his truck, smell burnt marijuana, and asked McIntee if there was more marijuana in the vehicle.  McIntee admitted that there was and said that they had been smoking while driving down the road.  After some initial reluctance, the

passenger gave the officers a "a baggie of marijuana" and a pipe. The officers then searched the vehicle and found "five small pre-packaged baggies" containing methamphetamine, more drug paraphernalia, and two .22 caliber rifles. McIntee states that the rifles were unloaded and located behind the truck's seat wrapped in a blanket, and that no ammunition for the two rifles was found anywhere in the vehicle.

McIntee contends that the July 2013 law enforcement stop was a pretext to investigate more serious crimes. As a result, McIntee asserts, this evidence should be suppressed. McIntee further argues that Count VII, the gun charge, should be dismissed because the location of the firearm and the lack of ammunition precluded McIntee from possessing the guns in furtherance of a drug trafficking crime as defined under 18 U.S.C. § 924(c)(1)(A). The Court will address each of these arguments separately.

## DISCUSSION

### A. Motion to Suppress

McIntee argues that the July 2013 stop violated the Fourth Amendment's prohibition on unreasonable searches and seizures. In support of this argument, McIntee asserts that the officers who stopped him did so on a pre-textual basis in order to harass him due to his attendance at the Rainbow Gathering and to

investigate for more serious crimes other than the signal violation. McIntee concedes that he failed to signal before making the turn, but argues that due to the remote location of the road and the lateness of hour, "[a] reasonable officer would not have stopped a vehicle under the same circumstances . . . unless he desired to perform some other improper activity." (Doc. 53 at 5.)

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-810 (1996). An automobile stop, therefore, must be reasonable under the circumstances. *Id.* at 810.

McIntee apparently contends that the July 2013 stop was not reasonable because, even though an officer "could have" pulled McIntee over for not signaling before turning, no reasonable officer "would have" stopped him under the circumstances. (Doc. 53 at 2.) Thus, McIntee argues that this Court must "inquire whether a reasonable officer 'would have' made the stop anyway, apart from his suspicions about other more serious criminal activity." (*Id.* (quoting

4

*United States v. Cannon*, 29 F.3d 472, 476 (9th Cir. 1994).)  McIntee is mistaken.

In *Whren v. United States*, the United States Supreme Court addressed this "would have" test and soundly rejected it.  517 U.S. at 813–816.  There, in a unanimous decision, the high Court found that a seizure supported by probable cause is constitutional regardless of whether a reasonable officer "would have" made the stop.[1]  *Id.* at 817.  The Court noted that, in a previous decision, it "flatly dismissed the idea that an ulterior motive might serve to strip [law enforcement] of their legal justification . . . [and] held that a traffic-violation arrest (of the sort here) would not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search'"  *Id.* at 812-813; see also *United States v. Choudhry*, 461 F.3d 1097, 1102 (9th Cir. 2006) ("[A] traffic violation was sufficient to justify an investigatory stop, regardless of whether (i) the violation was merely pretextual, (ii) the stop departed from the regular practice of a particular precinct, or (iii) the violation was common and insignificant.")

Here, the officers' reports from the night of the stop stated that McIntee's vehicle was "traveling at a high rate of speed" and "really moving fast compared"

---

[1] This general rule, however, may be excepted by facts which support that an officer's stop was based on improper grounds, like selective enforcement of law based on race.  *Whren*, 517 U.S. at 813.  McIntee, however, does not argue that the law enforcement stop was based on racial motives.

to other vehicles the officers had observed previously. (Doc. 53-2 at 1.) After observing the vehicle stop "quickly in the middle of the road" to look at an information sign, it "quickly backed up and [] turned left without using a turn signal." (Docs. 53-2 at 1; 53-3 at 1.) The stated reason for the stop was McIntee's failure to use "his left turn signal." (Doc. 53-3 at 1.) These facts are sufficient to establish that the officers had probable cause to conclude that a traffic violation had occurred. *Whren* forecloses any arguments that a purported pre-textual stop supported by probable cause is unreasonable. McIntee's motion to suppress will be denied.

### B. Motion to Dismiss Count VII

McIntee next moves the Court to dismiss Court VII which alleges that he possessed the rifles seized during the stop in furtherance of the drug trafficking crime charged in Count VI. McIntee contends that Count VII should be dismissed because the location of the rifles, i.e., behind the truck's seat wrapped in blankets, and the lack of any ammunition in the vehicle or the firearm, factually precludes the finding the they were used in furtherance of a drug trafficking crime. McIntee's argument, however, is premature.

McIntee moves the Court to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(2) which allows a party to "raise by pretrial motion any defense,

objection, or request that the court can determine without a trial on the merits."

The Ninth Circuit, however, views with disfavor pretrial weighing of the evidence.

*See United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) ("A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.  A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.") (citation and quotation marks omitted); *see also United States v. Nukida*, 8 F.3d 665, 670 (9th Cir.1993) ("The unavailability of Rule 12 in determination of general issues of guilt or innocence helps ensure that the respective provinces of the judge and jury are respected.") (citation and quotation marks omitted).

    Here, the Court declines to assess the validity of McIntee's argument that he was precluded from using the firearms in furtherance of drug trafficking because the guns were not readily usable.  This issue will be settled after the evidence has been presented to the jury.  As such, McIntee's motion to dismiss will be denied.

    IT IS ORDERED that Defendant McIntee's Motion to Suppress (Doc. 52) is DENIED.

    IT IS FURTHER ORDERED that Defendant McIntee's Motion to Dismiss (Doc. 54) is DENIED.

Dated this 2nd day of May, 2016.

/s/ Dana L. Christensen

Dana L. Christensen, Chief District Judge
United States District Court